May it please the Court, Bid Meshes on behalf of the Appellant, Papalote Creek Wind Farm. In compelling this case to arbitration about the interpretation of a damages provision, the District Court went beyond its authority in two ways. First, the Court forced Papalote to arbitrate a question that the parties never agreed to arbitrate in Section 13 of the Power of Purchase Agreement, which we refer to as the PPA. Second, the District Court was without jurisdiction to acquire arbitration under Section 4 of the Federal Arbitration Act because there was no case or controversy. The case was not right. Let me ask a question. I guess maybe it's okay. So now things have progressed, you might say. And is there an arbitration proceeding? Have we started over again? So just the procedural history is that arbitration has already occurred. There's been an arbitration award by the arbitrator. But was that before the, what was it, they quit taking power? So they did not stop taking power until October 2016. So last fall after the LCRA's response brief came in on this case. So after that happened, we provided a letter to the Court informing the Court that LCRA had decided to stop taking power, and that was in conjunction with our reply brief. So it kind of came in between the response brief and this appeal and our reply brief. So there might have not been an issue for arbitration then, but is there now? And does that make a difference that now they're not complying with the contract? So now there is an issue for arbitration. So if we agree with you, do we go back to step one, or where do we go now? So the fact that they have not complied with the contract, I guess, or it goes to arbitration now, it seems like the issue is right now. It might have not been right then, but is it right now, and what does that? So we certainly think it was not right at the time the case was compelled to the arbitration, and frankly, at the time the arbitration proceeded. I think at this point, the proper resolution would be to reverse the order of compelling arbitration, because the question is at the time the case is compelled to arbitration, did the court under the contract, district court under the contract, and under the Federal Arbitration Act have authority to send the case to arbitration? What that practically means, if the order of compelling the case to arbitration is reversed, and this is under a set of precedents from across the country, is that the arbitration award itself that was handed down last summer is unenforceable. And just so the court understands, we have proceedings pending on the district court seeking vacature of the arbitration award pending the outcome of this case. Yeah, but that begs the question of whether you can relate back, as Judge Prado was suggesting, you can relate back what has occurred to the time of the order of arbitration to validate that order. In other words, ordinarily, you have, the court has jurisdiction at the beginning of the case when it issues its order, and that's the determinant of time, but there are cases that suggest that whenever a case is dismissed on the basis of Article III jurisdiction on rightness, that you can do not pro-talk, as it were. So Judge Jolly, we do acknowledge that rightness is a different kind of jurisdictional doctrine, and that it can change over the course of time. It's a timing-related jurisdictional doctrine. But what we would point the court to is a couple of things. Most of the cases in which that's happened, the court hasn't actually ordered something, some kind of affirmative relief. So this is, what an order of compelling arbitration really does is it orders specific performance of the contract. And so at that time, the court obviously didn't have authority to do that under our set of arguments. And we also would point the court to, there's a case out of the Seventh Circuit by Judge Posner. It's a later version of a case that LCRA cites, the union typographist case against the Chicago Tribune and the Chicago Sun-Times. What Judge Posner noted in that case is that you cannot consider developments that occur after the motion to compel arbitration in deciding, in fact, whether there's arbitration. That articulates a rule at the time of filing. But we think there's an equally clear case that you should, I mean, if you don't like that approach, just limiting it to the time of filing, which I can understand the court's hesitancy there, it does seem very difficult to sort of breathe new jurisdictional life into a district court judgment that at the time it had no authority to issue. And this issue is of great practical significance in terms of how the jurisdictional issue will play out because it wasn't just that the breach claim wasn't right, but there were a number of other issues that could not have been right at that time either that will make this a very different proceeding. So it's practically quite significant. For that reason, we think it really makes a lot of sense to urge a rule that no later than at the time of the judgment, the court had to have jurisdiction. Now, if it's okay with the court, I would also, we have two basic points in this case. We have the jurisdictional issue, which we've talked about, but we also have an argument about the scope of the arbitration provision. And if I can, I'd like to make a couple remarks about that before we dive into the provision itself. This is not the usual arbitration case. This is not the standard case probably you all have seen many times and district courts see across the country often where it involves in any and all disputes provision. This is a provision that's fairly narrow in committing performance disputes to arbitration. And so this case is a question of consent and it turns on the construction of what is a performance dispute as a matter of Texas contract law. And we believe the court can certainly look to the Tittle decision as providing a framework for analyzing a more narrow arbitration clause. So Article 13 defines the scope of arbitration and everyone in this case agrees that it's narrow in scope. LCRA said it relates to performance disputes on page 41 of the brief in this court. And the district court agreed at page 586 of its opinion that it covers only disputes with respect to performance. So the question before the court today is whether the Section 9.3 claim that LCRA has alleged is a dispute with respect to performance. And we respectfully submit no and let me explain why. The sole dispute that LCRA has identified is whether Section 9.3 limits LCRA's ultimate liability for damage in the event of a breach. And so as framed by LCRA, this is a discrete question of whether LCRA's damages for liability for damages, rather, might ultimately be capped. What LCRA has argued in this court is that the payment of damages is performance. But that's wrong based on the text, structure, and operation of the PPA. What LCRA has alleged in this case is a question of remedy, not performance, which are two legally deceitful concepts. I want to first address what I think is the premise and is a flawed premise of LCRA's position, then turn to our argument about why it's really a remedial issue in this case. And that is because what they argue is that the contract, the PPA, provided two alternative pathways of performance. They can either take all the power or they could pay damages. But that badly misconstrues the terms of the PPA. There is simply no textual support for these alternative performance theories and all one needs to do is look at Section 3.1. It is clear that Papalote's performance obligation, we must deliver the power to delivery point. Any power we produce, any wind energy, we deliver it to the delivery point. And LCRA's obligation is equally clear, to take and purchase all of this power at a set contract price. These are not optional performance obligations. So what happens, what happens if they, if LCRA does not take the power? And the answer is there is a set of provisions in this contract that are part of what's called a, quote, exclusive remedy for this failure to perform. So I thought it would be helpful to walk the court briefly through some of the key contractual provisions that explain why the way this contract operates supports our argument that it's remedial in nature. But at bottom, it's a, the calculation analysis of the extent of the remedy is governed by a multi-step damages analysis based on different remedial concepts and provisions. So for example, Section 4.3 of the contract, in addition to stating that it is a question of an exclusive remedy, establishes a measure of damages. It's a measure of damages that we often see under the UCC. It's a standard seller's remedy under 2706. And Section 4.3 makes clear that the remedy is only triggered if Papalote is unable to resell the, sell the power. And then Section 9.5, interestingly, is a mitigation provision. What it says is there's a duty on Papalote to mitigate damages for non-performance. It doesn't say mitigate performance for non-performance, it is a damages concept and is governed by a commercial reasonableness standard. And I also would highlight for the Court Section 9.4 of the PPA, which confirms, it confirms it's a remedial provision in every way. This provision is, you know, talks about what happens when you have an exclusive remedy, it governs enforceability, and it talks about disclaimers of other forms of damages. I mean, it's littered with damages remedies concepts throughout. And this is the very provision, this 9.4, that applies to the 4.3 exclusive remedy. So the, the, the meaning and application of Section 9.3 is, as I mentioned, the sole issue LCRA has identified. But it is only presented, and the reason I want to point this out is there is an incredible attenuation between the performance obligations in 3.1 and the remedies. If LCRA elects not to take power, which was not at issue in the arbitration, if Papalote is unable to resell the power, which is not at issue in the arbitration, if Papalote uses commercially reasonable efforts to mitigate, which was not at issue in the arbitration, only then, and if we approach near $60 million in damages, only then does this very discreet question about how the cap applies, only then are we at a point where that, that issue comes to life in terms of ripeness, but it also reveals how disconnected the 9.3 question is from performance. Now I want to address LCRA's, what we, we believe is sort of a backstop point, where they say that, well, our, how we, how you interpret Section 9.3 arbitrator will determine our performance obligations, and this is simply wrong. No matter how Section 9.3 is interpreted, it does not change LCRA's obligation to purchase all the project capacity, and it doesn't change the price provisions of the agreement either. So for these reasons, we respectfully request that the Court can reverse the District Court's judgment, compelling arbitration, because the claim that LCRA identified is well beyond the scope of the provision. I want to turn back to the jurisdictional argument, if I can for a minute, and just lay out a few principles and explain what we believe kind of the scope of this particular argument is. The issue we have raised here is whether the Court had jurisdiction under Section 4 of the Federal Arbitration Act, so that provision and federal subject matter jurisdictional principles determine the Court's resolution. And what the text of the statute mandates is that the District Court consider the jurisdictional question, quote, save for such agreement, and the such agreement is the arbitration clause. So almost every one of the arguments that LCRA makes in this case is based on the arbitration clause itself, but those play no role in analyzing the Court's subject matter jurisdiction. So we will focus on the plain text, and I want to point the Court to two decisions which we think are quite helpful in this respect. The first decision is Baden, which is a U.S. Supreme Court case which teaches that the Court looks past the arbitration clause to determine whether the Court would have jurisdiction over the substantive controversy between the parties. And then a decision out of the Eleventh Circuit by Judge Choflat. It's Clay v. UnitedHealthcare. It's a case that gets side-voted by both parties, but I want to be clear, it absolutely supports our position about jurisdiction in this case, because what Judge Choflat noted in that case is that if a party seeks to compel arbitration under Section 4, the District Court must determine if a case of controversy exists over the motion to compel. If there is no case of controversy, then the Court cannot compel arbitration. Now what LCRA's position about Section 4 is, they have a very limited position on Section 4, and it is this. They say, well, as long as there's a dispute about arbitrability, that is, should we go to arbitration, that's enough to create a case of controversy for purposes of Section 4. And the U.S. Supreme Court's decision in Baden explicitly rejects this particular argument. What the argument there was, was that, quote, the parties' discrete dispute over the arbitrability of claims, close quote, is the controversy for purposes of Section 4. And the Court emphatically said no, and it based it on the plain text of Section, of the provision, that said the jurisdictional analysis, again, is governed by jurisdictional principles, save the arbitration clause. So it is our view there was not a right dispute at the time the District Court issued its order. There was never a, there were so many contingencies, as we talked about before you would even get to Section 9.3, one of which is whether they would even make the decision to stop taking power. And, in fact, there was quite a lot of back and forth between the parties on a pre-dispute basis. And I commend to the Court Record 131 to 132, which is the Williams Affidavit, which is an affidavit provided by representative LCRA, in which they never say that they're playing to stop taking power, they never threaten to breach, and they maintain their intent to continue performing the contract. And this is really throughout all of the back and forth in kind of the late spring of 2015 before the demand for arbitration was issued. This circumstance was true pre-arbitration, it was true at the time the motion to compel arbitration was filed, it was true during the arbitration in which LCRA, page 626 of the record said, quote, there are a myriad of circumstances, close quote, that would, that might determine whether or not LCRA would stop taking power. LCRA's argument ultimately boils down to the fact that they wanted an advisory opinion from the courts about the meaning of Section 9.3. And the district court understood that point and multiple times acknowledged that's exactly what they were seeking. This is an advisory opinion, there's no right case or controversy, so in addition, based on Section 4 of the Federal Arbitration Act, the court should reverse the district court's judgment compelling arbitration. Thank you very much. Thank you, sir. Your Honor, I want to address first the issue of whether the dispute, the request to interpret It clearly is. LCRA under this contract had two obligations, two alternative obligations. It either had to take and pay for all the electricity generated by the wind farm or it could not take, it could not take the energy and it could pay liquidated damages. In order for LCRA to know how much electricity it had to take, the total amount of the electricity, or for it to know how much in liquidated damages it had to pay, you have to know what Section 9.3, the liability limitation, means. In other words, the liability limitation is inextricably intertwined and informs LCRA's obligation both how much electricity do I have to take under this contract, that's performance, or if I don't take the electricity, how much in liquidated damages, the alternate performance, do I have to pay? And this court has held repeatedly. Arbitration is a favored remedy. Therefore, when you construe an arbitration clause, you construe it broadly and only if there's no possible way does the claim, can the claim fall within the arbitration clause, do you not order arbitration. What Papalote does is it takes the most narrow possible reading of the clause and it says, the clause says performance. A liability limitation standing alone is in performance, so therefore there's no performance, but you have to read the agreement as a whole. And the liability limitation, as I said, is inextricably intertwined and informs both your obligations. How much electricity does LCRA have to take and how much in liquidated damages does it have to pay? In other words, Your Honor, Judge Sparks got it right when he found there was a performance-related dispute. With respect to rightness, I think as Judge Jolly pointed out, the dispute is now ripe. It relates back. We've had the arbitration. In the arbitration, they argued that there was no rightness. They lost on that point. They argued that the liability limitation didn't limit LCRA to $60 million, as LCRA said it did. They lost on that point. What if we say, at this point, that this dispute was not ripe when Judge Sparks sprung into action? Where does that leave you now? And to be perfectly candid, I think there are two issues. If you determine it's not a performance-related dispute, then you can't arbitrate it. If you determine... But what if we just say, at the time that Judge Sparks entered his order here, the case was not right. He didn't have jurisdiction. If we say that, then what? I think it relates back. The ripeness now relates back. What are we going to do? Go back? Well, ripeness is decided right at the beginning. I mean, that right when he sprung into action, that's when you have to make an assessment. If that's a... A springing use backwards. And if that's a determination you make, then we have to start over. But the issue is, on the ripeness, there are two points. The first is, there is no ripeness requirement with respect to the claim. And that's because ripeness is a judicial doctrine. Arbitration is by contract. The parties can agree by contract to arbitrate unripe disputes. I don't understand. I don't like to wade in too much in an argument, because I'd rather hear from you than myself. But what I'm concerned about here is, at the time Judge Sparks entered this order, everybody is happy. Well, I don't know if they were happy. But the point was, everybody is telling the judge, and we have to credit this, we're all just performing like true soldiers. We're not breaching anything. We're on course, that's that. So why, we're looking at the question whether the district court had jurisdiction. That's the threshold issue. And if there was no, if everybody's on course, we're not threatening to breach, everybody's happy. Well, I may not have been happy, but everybody's at least performing. And then the question is, did the district court have jurisdiction? Did it have a ripe dispute? I don't see it. And, Your Honor, what the problem is, you have to distinguish between a case or controversy under Section 4 of the Federal Arbitration Act and ripeness of the claim. And what all the cases say, and we cite them in our brief, and we discussed one in particular, the Bunker Hill case, case out of California, and then we cite a bunch of federal cases. But Bunker Hill had the best determination. And what the cases say is, for the claim itself, you have a ripe or a case in controversy for purposes of Section 4 if three requirements are met. Number one, you have to have an arbitration clause. Number two, you have to have a party who refuses to arbitrate. Number three, and this is where the so-called ripeness or case or controversy comes in, you have to have a dispute about whether the underlying claim is within the scope of the arbitration clause. So if you have that dispute, so if there's a dispute about the claim being within the scope of the arbitration clause, then you meet the case or controversy requirement. All right. So go through that once more with feeling. That's where you're hanging your hat, obviously. And one other thing, Your Honor. If you read all the cases, what they say is arbitration is a creature of contract. And that means you can agree to arbitrate an unripe dispute. And I'm sure Judge Jolly will recall from his days when he was at the NRLB, you don't have to have actual enforcement of a labor rule to take it into arbitration. I understand that. But what Judge King is, I understand what she is talking about is the same thing concerns me and what the crux of the case and how it would be decided is whether the federal court has Article III jurisdiction. And the argument there is that because it dismissed it, because the question of jurisdiction is rightness, the question is whether you can relate back in the rightness situation when you could not in any other kind of Article III declination of jurisdiction. And, Your Honor, what that's... And to me, there's no authority on that one way or the other. I mean, there are cases that do say that we, that rightness can be determined, can go back, can relate back. But it's not clear at all to me that it can. I don't know. And, Your Honor, I think what's being missed here is here there was a dispute about whether the claim... We were seeking declaratory relief, in effect, and... But you didn't say that. Well, we always said we wanted an interpretation or construction of... And the question clearly was unright at the time the judge first considered it, because you had not joined the issue. You just refused to do it. And the other point, Your Honor, if you look at Section 13.2b of the Arbitration Clause, we weren't allowed not to take power. Once we raised the dispute about the meaning of the liability limitation, under Section 13.2 of the Arbitration Provision, we're required to continue to perform. So we couldn't contractually say, King's X, we want to talk about this. We have a dispute about it. Now we're not going to perform. But the point is, Your Honor, and I believe the law is very clear on this, and we cite in our brief two Court of Appeals decisions and seven or eight District Court decisions. And when there's an argument about rightness, that issue becomes one of substantive versus procedural arbitrability. The claim, the Court has jurisdiction under Section 4 if there's a dispute about whether the subject matter of the claim falls within the Arbitration Clause. That creates a case or controversy. Whether that claim can be arbitrated because it's ripe or not is a question. I understand what your argument is, but how does that avoid the Article 3 question that is presented to the District Court that is no concern of the arbitrators? I mean, I quite agree that arbitration, that rightness, is different, can be different, under requirements for federal jurisdiction and the requirements for the case to be arbitrable for the arbitrator. Right. But if you go to the underlying question here, other than this dispute between the… Your Honor, if you have a rule that the claim in dispute, the claim that's purportedly subject to the Arbitration Clause, if that has to be ripe, then what you're doing, you're engrafting on arbitration a contractual obligation. You're saying you can't, you cannot agree to arbitrate an unripe dispute. And that's contrary to every case there is. You can agree. I mean, I agree with that. You can arbitrate an unripe dispute. But that's what we… But can the Federal District Court have Article III jurisdiction to order it? He has to, Your Honor, because for purposes of Section 4 of the FFA, the case or controversy exists if you have the Arbitration Clause, if you have a party that refuses to arbitrate, and if the dispute itself is about whether the claim is subject to the Arbitration Clause. But is there a claim?  Yes, there is a claim. We had a dispute. We met with them for two or three months in the… And let me go back. What happened in this case is we signed the contract in 2009. By 2015, because of the collapse in oil and gas prices, the contract's out of the money. In other words, we're paying far more for this wind power than what you could buy electricity on the open market. We go to them. LCRA goes to Papalote and says, we're paying so much more here. We have a liability limitation of $60 million. Let's redo the contract. Papalote goes to us and they say, you're wrong. You don't have to do it. We don't have to do anything, but we won't tell you what the liability limitation means. You have a dispute right there regarding the meaning of the liability limitation. Does it limit LCRA's liability to $60 million or not? That's the issue we took to Judge Sparks and that's the issue that was arbitrated. And what their position is, is that that claim has to be ripe. And what I'm telling you is if you look at all the cases we cite in our brief and you look at it logically, if you can agree to arbitrate an unripe dispute, which the parties clearly can, there are no cases that say that, then what the courts say is the test for ripeness or case or controversy doesn't matter whether the dispute is unripe, because that becomes part of the substantive procedural dichotomy in Howsam versus Dean Witter. But the parties can't agree among themselves that the court will have jurisdiction. The court has to decide it has jurisdiction. And I agree with you. But the point is what they're confusing and I think what the court is confusing is what constitutes a case or controversy for purposes of Section 4. And the distinguishing factor that constitutes a case or controversy is the idea there's a dispute over whether the underlying claim is arbitrable, is within the arbitration clause. That's the ripeness or the case or controversy argument. If you do it any other way, parties can agree to arbitrate an unripe dispute. You know, you can agree, you know, for example, Judge King and I could agree to arbitrate whether the, you know, anything, any point, it doesn't have to be ripe. And if you say that the dispute has to be ripe, that you can't enforce the arbitration agreement. That's not the law. What the law is, is that if the claim, if there's a dispute about whether the claim is within the arbitration clause, that's the ripeness. And then the issue of whether the claim actually has to be ripe is, is a, is... What you're saying is that it's irrelevant to the Federal District Court as to whether the dispute is ripe. As long as it satisfies the Arbitration Act itself, it is for the court to decide. But then that has the effect of denying the general principle that Shoflat, the opinion or the Supreme Court in Vaden, said that you go to the underlying, you go to the underlying claim and you make a determination there as to whether the court has federal jurisdiction. And, and the problem with that argument, Your Honor, is Vaden has nothing to do with ripeness. In Vaden, there were two issues. The issue, the first issue was, you know, as the court knows, the FAA doesn't confer subject matter jurisdictions. So you either have to have diversity or federal question. In Vaden, the question was, how do you determine if there's federal question jurisdiction if one of the parties hasn't sued and asserted a claim? So what the court said is to determine whether or not that federal question jurisdiction exists in the first instance, you have to look through the complaint and see if there's a plausible federal question. The other issue in Vaden was, well, if the, if there was a counterclaim that could assert a federal question, does that give you jurisdiction? It had nothing to do with ripeness. If you look at the District Court opinion, the Court of Appeals opinion, the Supreme Court opinion, and every case that cites it, there's not a single one that says Vaden stands for ripeness for arbitration. It's simply, how do you determine if there's a federal question when it isn't pled in the complaint? Because one of the parties is just saying, I want to have an arbitration, but there's no cause of action alleged. How do you determine if there's federal question? That's the issue. It has nothing to do with ripeness. The other point, the last point I want to make, Your Honor, is this dispute was ripe. What we were seeking was a declaratory judgment regarding the meaning of Section 9.3. And as the Court knows, is there's an... Do you think you meet the requirements of a declaratory judgment? Absolutely. What was the hardship? The hardship is very simple. What they were trying to do, what Papalote tried to do, is give us, give LCRA a Hobson's choice. If we breached a contract, if we went to them and said, we're not taking any more electricity, which we couldn't do because we were prohibited from doing it by the arbitration clause. But if we would have breached a contract, that meant they could have declared a default and under Section 6.3 of the PPA, they could have got a termination payment. And the termination payment is basically the contract price, less the current market price, times the total amount of electricity from 2015 for another 12 years. That dollar amount was $200 million. How is that a hardship? Why should we have to make a choice between running the risk of writing a check for $200 million, affecting our credit rating, affecting our ability to borrow money, affecting our competitive position in the electric market? And the point is, is this Court has held in Oryx Credit Alliance and in Venatar Group, is under, when you're seeking a declaratory judgment, you balance two factors. The fitness for review and the hardship. Fitness for review depends on whether the issue is a purely legal one. Here, there was no dispute. Nobody argued that the liability limitation was ambiguous. So the issue was one of pure law. The second issue is hardship, as you point out, Judge Prado. And here, we had a Hobson's choice, assuming that we could breach, was run a risk of incurring $200 million in liability by either breaching or anticipatorily breaching the contract or seeking a declaratory judgment. And the best example of this, in our brief, we discussed the Venatar Group specialty, Yank versus... I'm getting awfully close to an advisory opinion. It may be, Your Honor, but the point is what this Court held in that case, it was a question of whether a lease requirement that required you to restore the premises... We're going to give each side another minute, so go ahead. Okay, at any rate, in that case was you had a lease that said at the end of the lease, you had to restore the premises to its original condition. To do that would have cost millions of dollars. It was impossible and it violated current law. The lessee went ahead and asked for a declaratory judgment that it didn't have to perform that. The lessor said, no, it's not right because nobody knows what the law is going to be in three or four years when the lease terminates. And more importantly, we never demanded that the lessee make the repairs. And what this Court and the District Court agreed with them, this Court reversed for the same reasons that I've articulated. The question was one of law and the consequences or the hardship was great because it put the lessee in a position where it didn't know how to deal with a restoration that would cost millions of dollars. Okay, thank you. Thank you, Your Honor. Mr. Mitchers. I want to cover three points in the rebuttal. First, the scope of the Section 4 argument. Second, the relation back problem. And third, the Hobson's Choice argument that Mr. Wise just made. Let's begin with Section 4. This is very clear. What Elserio is arguing... To me, and we'll give you time to make your arguments, but to me, I mean, the question is whether we focus in terms of federal jurisdiction, not on the rightness of the dispute between the parties, but on the fact that the parties have a dispute about... So answer that. I completely agree, Judge Jolly. And if I can, I want to direct the Court's attention to Vaden v. Discovery Bank. And this is a language that's on page 63 of the Court's opinion, and I would just like to read some of the language there. The relevant controversy between the parties, Vaden insists, is simply in only the parties' discreet dispute over the arbitrability of their claims. And then Justice Ginsburg, in one paragraph below, says, Vaden's argument, though reasonable, is difficult to square with its statutory language. Section 4 directs courts to determine whether they would have jurisdiction, save for the arbitration agreement. How, then, can a dispute over the existence or applicability of an arbitration agreement be the controversy that counts? And every argument the LCA makes in this Court about procedural arbitrability, substantive arbitrability, whether the clause requires or does not require an advisory opinion or any of those issues is excluded through the look-through analysis that Vaden adopted. And as you noted, Judge Choflat extended that exact principle to case or controversy jurisdiction in footnote 11 of the Clay opinion, in which he was really juxtaposing a motion to enjoin arbitration, where there's not a rightness requirement, from a motion to compel. That is, you're seeking federal court assistance to compel specific performance with the contract. So turning more in depth on the point about relation back, I will point out, in our briefing to the Court, and it's in our reply brief, and pages 13 through 18, we provide our view about whether or not you can breathe new jurisdictional life. And we think the answer's no. As I mentioned earlier, there's a helpful case out of the Seventh Circuit, and I thought I'd just provide the Court a cite to this. It's 935 F. Second, 1501 at page 1508, in which the Seventh Circuit says we don't decide whether there was a right dispute based on events that happened after the motion to compel. And so we think the right answer to the jurisdictional problem in this case is dictated by Section 4 of the Federal Arbitration Act. Because you either grant the motion to compel, or you deny it. And if there's not federal jurisdiction, federal subject matter jurisdiction, that you would need over the subject matter of the controversy itself, you simply deny the motion to compel. And that's what we're asking to happen. And as I mentioned earlier, what that means is the arbitration award is unenforceable, it would be set aside, and yes, I think Mr. Wise correctly acknowledges in that circumstance, we would be starting over. I want to... So do you go back now, and now that it's right, I guess, because they haven't paid, there'll be another arbitration? Well, here's what I think would happen, Judge Prado. I think because they have indicated they're not going to take power, we would have a breach of contract claim under 13.1. And El Seri would articulate its view about why there's not a breach. Some of the arguments Mr. Wise made earlier today, there would maybe be an argument about not the 9.3 provision, other contractual provisions. It would be a full-throated, regular arbitration about a breach of contract claim. That's how it would be. And that didn't happen before. And the reason was, as the court has known this morning, it was advisory, we weren't ready yet. We hadn't gotten to that point. Let me ask you something. If you're dealing with a public accounting firm, and they say, okay, you know, we got to decide whether to issue a report on your financial statements. So how do we know that if someone breaches here, what the disclosure in your financial statements has to be about that? I mean, yes, we want an advisory opinion in a sense, but it's concrete. We need to know what the limit of our liability is. And is it pure gold? I mean, are we really limited the way this thing purports to be or not? I mean, it can be a real, it could be an important issue. And I understand that concern that you've raised. But what I would say is, it wasn't that hard to make a ripe dispute in this case. They sent the letter in October 2016, but I think under the court's decisions, the Venator case, which Mr. Wise talked about, and some of the ORECs, the question is not whether or not you've locked your feet in the sand and you've breached the contract, you've passed the precipice. The question is whether it's likely to happen. Is there a likelihood of that dispute? And at no point in time did they even threaten to breach. So I don't think the accountant scenario is presented. I also would note that if you're looking... Well, it could be. I mean, the point is that you have all kinds of disclosure requirements that are driven by just exactly what are the limits of liability here. And it's not too theoretical. And I understand the point about it not, that they think that there's sort of this hardship problem. But again, if that was the situation, it would have been very easy, very easy to say, we're intending to breach. We're going, we will breach. We will not take power. And they never did that. And we pushed them on this point for months and back and forth between the parties. You wanted to make three points or something? Yes. And this was my last point, Your Honor, about hardship. And so if the court has no further questions... Okay. Thank you. That completes the...